UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| JOANNE MARIE LEACH, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) |  |
| v. | ) ) | 1:10-cv-00067-JAW |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) ) ) |  |
| Defendant | ) |  |

### RECOMMENDED DECISION

The Social Security Administration found that JoAnne Marie Leach has severe impairments consisting of degenerative disk disease, knee pain, and obesity, but that she retains the functional capacity to perform substantial gainful activity in the form of her past relevant work, resulting in a denial of Leach's application for disability benefits under Title II and Title XVI of the Social Security Act. Leach commenced this civil action for judicial review of the final administrative decision, alleging errors at Steps 4 and 5 of the sequential evaluation process. I recommend that the Court vacate and remand.

### Standard of Review

The standard of review is whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted

to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## The Administrative Findings

The Commissioner's final decision is the January 28, 2010, decision of the Decision Review Board, which "found no reason" to disturb the decision of Administrative Law Judge John Melanson. (Doc. No. 5-2 at 2.) The Commissioner rests, in effect, on the October 26, 2009, decision issued by Judge Melanson. (Id. at 12-26.) Judge Melanson's decision tracks the familiar five-step sequential evaluation process for social security disability claims.

At Step 1 of the sequential evaluation process, the Judge found that Leach meets the insured status requirements of Title II through September 30, 2013. (Finding 1.) As for whether Leach engaged in substantial gainful activity ("SGA") between her alleged disability onset date, July 24, 2005, and the date of decision, the Judge found that Leach had done so between the dates of April 1, 2007, through January 31, 2009. Consequently, he determined that benefits were not available during this return-to-SGA period, as a function of a step 1 analysis, and proceeded with his sequential step evaluation only in relation to the periods between July 24, 2005, and March 31, 2007, and between February 1, 2009, and the date of decision, October 26, 2009. (Finding 2.) The substantial gainful activity found by the Judge consisted of work performed as a mental health specialist. (Id.) Leach's statement of errors does not include an objection to these findings.

At Step 2, the Judge found that Leach's alleged mental health impairments, bone spur condition, and cardiovascular condition are non-severe or not medically determinable for purposes of Step 2, but that degenerative disk disease is severe, as are bilateral knee degeneration and obesity, when considered in combination. (Finding 3.) Leach does not argue against this finding.

2

At Step 3, the Judge found that this combination of impairments would not meet or equal any listing within the Commissioner's Listing of Impairments, addressing specifically musculoskeletal listings 1.02 and 1.04. (Finding 4.) Leach does not press a contrary argument here.

At Step 4, the Judge found that the medical evidence and other evidence of record reasonably demonstrates that Leach's combined impairments result in the following residual functional capacities and limitations:

> to perform less than the full range of light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), such that she can:
>
>> lift 20 pounds occasionally and 10 pounds frequently;
>>
>> stand/walk 3-4 hours in an 8-hour day;
>>
>> sit 6 hours in an 8-hour day, with the option to sit or stand at will;
>>
>> occasionally climb stairs or ramps, stoop, kneel, crouch and crawl;
>>
>> never climb ladders, ropes or scaffolds;
>>
>> never encounter environments with hazardous conditions, irregular terrain and heights.

(Finding 5.) With this RFC finding in place, the Judge determined that Leach remained capable of performing her past relevant work as a "community program aide." (Finding 6.)

Although a step 4 finding is an independently sufficient basis for stopping the sequential analysis, the Judge made an alternative finding for step 5 purposes, finding on the basis of vocational expert testimony that Leach could engage in other substantial gainful employment, including as an "assembler," "marker," "order clerk," and "addresser." (Finding 6.)

**Discussion of Plaintiff's Statement of Errors**

Leach argues that the Judge erred in regard to his residual functional capacity finding by failing to specify the frequency and duration of the sit/stand option. Leach also complains about the quality of the hearing transcript, which contains many "INAUDIBLE" references.

**A.	Sit/stand option**

According to Leach, a residual functional capacity finding of a "sit/stand option" contravenes Social Security Ruling (SSR) 96-9p and decisional law in this District because it is not sufficiently specific about the frequency at which she would need to alternate between sitting and standing. (Statement of Errors at 2-3.) Leach further argues that the record lacks substantial evidence that the jobs in question can be performed by Leach because the Judge proposed a "sit/stand option" in his hypothetical to the vocational expert, but did not include the words "at will." (Id.; see also R. at 67.)

As a preliminary point, the Judge's step 4 finding lacks support in the record. The vocational expert actually testified that Leach's past relevant work, including the community program aide position, was precluded by the RFC that the Judge adopted in his decision. (R. 66.) The Judge stated that he assumed his first proposed RFC finding would rule out past relevant work and the vocational expert responded in the affirmative. (Id.) Consequently, the decision must be upheld on the step 5 finding, if at all. The first occupation identified by the vocational expert was the sedentary occupation of "addresser" (DOT # 209.587-010), which he said "does allow a sit/stand option." (R. 67.) Another sedentary job that the vocational expert testified would meet a sit/stand option and other restrictions was "order clerk" (DOT # 209.567-014). The vocational expert further identified two light-exertion jobs that would allow for a sit/stand option: assembler (DOT #706.684-022) and marker (DOT # 209.587-034).

Leach argues that remand is required by Social Security Ruling 96-9p. Ruling 96-9p establishes a policy in relation to claimants who are restricted to less than the full range of unskilled sedentary occupations. Because such a restriction "reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare," and because sedentary jobs often require "a certain amount of walking and standing" the Ruling states, among other things, that an adjudicator's "RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing," where an individual needs to alternate position more frequently than what can be accommodated by scheduled breaks. 1996 SSR Lexis 6, *1, *8, *18-19, 1996 WL 374185, *1, *3, *7. Because the Judge found that Leach has a need to alternate positions, he made a frequency finding that called for freedom to alternate "at will." (Finding 5.) However, when he described the RFC to the vocational expert, he conveyed the need as a "sit/stand option." (R. 67.)[1]

Leach cites the adopted recommended decision in Wasilauskis v. Astrue, where the Court vacated and remanded the administrative decision based, in part, on insufficient specificity in the need to alternate positions. No. 08-284-B-W, 2009 U.S. Dist. Lexis 30286, *15-16, 2009 WL 861492, *5 (D. Me. Mar. 30, 2009). However, in Wasilauskis, the only occupation that could satisfy the Commissioner's step 5 burden was a sedentary job (dowel inspector, DOT 669.687-014). In this case, the vocational expert identified two light duty jobs in relation to the step 5 RFC hypothetical adopted by the Judge.

The concern addressed in SSR 96-9p is related to the fact that sedentary occupations, as a general rule, do not allow a worker to stand or walk on a regular basis, or as needed, so that an

---

[1] The difference between having an option to sit or stand to perform work and having the freedom to alternate positions at will in the course of work is not exactly clear. Arguably, the two concepts are the same. The idea of a sit/stand "option" suggests that a work station will allow work to be performed from a seated position or a standing position, at the worker's option. However, that idea is not necessarily the same as having freedom to frequently alternate position and possibly adjust a work station throughout the work day.

5

RFC limited to sedentary work and also calling for a sit/stand option will appreciably erode the occupational base, requiring a bit more detail for the vocational expert to consider. SSR 96-9p. It has been held that the Ruling's rationale does not extend to light-exertion work. The Court recently adopted a recommended decision in which Magistrate Judge Rich noted that the specificity in the sit/stand option required by SSR 96-9p does not apply in the context of light-exertion work. Levesque v. Astrue, No. 09-cv-331-B-W, 2010 U.S. Dist. Lexis 61446, * 10-11, 2010 WL 2076013, *4 (D. Me. May 20, 2010). This assessment has been carried forward in the more recent recommendation in Grey v. Astrue, No. 09-cv-645-P-H, 2010 U.S. Dist. LEXIS 125619, *6-7 & n.3, 2010 WL 3957392, *2 & n.3 (D. Me. Oct. 10, 2010).

Because Leach's residual functional capacity was expressed as allowing maximum exertion at the "light" level rather than the sedentary level, failure to comply strictly with Ruling 96-9p is not sufficient to necessitate a remand solely by force of the Ruling. However, I am not persuaded that the Judge's post-hearing RFC finding of a need for "at will" flexibility appropriately lines up with hearing testimony that was responsive to a "sit/stand option." Like Judge Rich, I am unwilling to infer that the two concepts are identical when it would be a simple enough matter for the Judge to make the matter clear in his questioning. Wasilauskis, 2009 U.S. Dist. Lexis 30286, *16, 2009 WL 861492, *5. The lack of correspondence between the Judge's actual written determination[2] and the vocational expert's testimony, in my view, makes the vocational expert testimony something less than substantial evidence in support of the

---

[2] In this case, the Judge clearly found in his written decision that Leach's residual functional capacity required that she be able to alternate position at will. Based on the recommended decisions in Levesque and Grey, it does not appear that a similar finding was included in the written decisions in those cases. In another recent recommended decision adopted by this Court, the vocational expert testimony was developed to a greater extent and the administrative decision was affirmed for that reason. See Cutting v. Astrue, No. 09-423-P-S, 2010 U.S. Dist. Lexis 71937, *4-8, 2010 WL 2595144, *2-3 (D. Me. June 23, 2010).

Commissioner's step 5 burden, even with respect to the two light-exertion jobs.[3]

**B.    Transcript deficiencies**

Leach otherwise argues that the transcript of the hearing "is so riddled with 'INAUDIBLE' passages as to be incomprehensible in sections," arguing that the transcript prevents judicial review and necessitates a remand. (Id. at 3.) This argument does not need to be resolved in light of the recommendation on the preceding issue. However, for purposes of future guidance, I would note that Leach's argument is itself deficient. It is not enough to argue that there are too many "inaudible" comments in the transcript. In order for such an argument to be fully developed, a plaintiff needs to explain why a particular inaudible notation in the transcript prevents meaningful review in relation to a specific issue under review. I would be inclined to recommend that the Court treat this issue as waived in the absence of that kind of developed discussion.

**Conclusion**

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court VACATE the Administrative Law Judge's decision and REMAND for further proceedings consistent with the foregoing discussion.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

---

[3]    I also note that the Judge failed to inquire of the vocational expert whether his testimony was consistent with the description of these occupations in the Dictionary of Occupational Titles.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

December 21, 2010